John Eggers, Jr. On behalf of the Appellant Michael Simko, per our previous filing for the Division of Time, I've ceded 5 minutes to the EEOC, so of my remaining 10 minutes, I'd like to reserve 3 minutes for rebuttal. Okay. The Division of Time granted the motion to dismiss the United States Steel in error, finding that it was most likely the case in Antle v. Perry. You're starting to drop out just a bit. Maybe if you move closer to the microphone, that might help. Okay. Okay. I don't know if this is better, Judge? So far, it is. It is. Okay. The court erred in granting the motion to dismiss, finding that the case of Antle v. Perry was most akin to the situation of Michael Simko. What is your case? From your submission, what is the most analogous case? I believe that the most analogous case is what I argued in the court as waiter. However, overall, and the main reason why I advocated initially for a hearing on Bonk was the main precedent of the court in the cases of Hicks, Waiters, Antle, and Robinson, they all deal with situations where you have individuals who have been presenting claims to the district court that did not pass through the EEOC process. Not saying we would, but we could easily agree with, especially your first point, without touching any of our precedent. I'm not sure why an en banc submission would be necessary if we just look at the facts of Antle and disagree with the district court's conclusion that that's the most analogous case. We've got two fundamentally different kinds of discrimination alleged. We don't have that here. And just proceed there and look at Waiters, which I would submit it might be a lot closer to the case than Antle. I would agree with you, Your Honor. I mean, in looking back over and preparing for today's argument, this, as you saw in Mr. Simko's matter, he is claiming and brought a claim of retaliation in the district court. His initial charge alleged violation of the ADA. Now, isn't that different though? Aren't those two things pretty different? In respect to what sections of the law they're dealing with, they are different. However, when you look to Mr. Simko's charge from 2013, and it was put into the record by U.S. Steel in its motion to dismiss, Simko alerts the EEOC at first about the fact that he's trying to bid a job. He's told that he can't have that job because he can't hear. He's returned to his former job, and then he's subject to comments from his boss telling him, you know what? If you can't hear, you're disabled. You shouldn't be here. Well, that foreshadows his eventual firing. Well, it may have foreshadowed, but his original charge that he filed was disability discrimination, failure to accommodate. Correct? Correct. U.S. Steel's put on notice of that. Then later, he makes reference to the fact that he's been discharged and it was retaliatory. He wasn't discharged based on his disability. He was discharged based on having filed the claim. So, it's a total different case. And in fact, U.S. Steel was never put on notice of that until he amended his charge in January of 2016. Isn't the point of having to file a charge that is based on different facts and different situations and different people? I mean, everything was different with respect to his discharge versus the original discrimination, the people, the facts. Isn't part of the point that these things need to be filed officially to put U.S. Steel on notice? They didn't even know this. So, how can we say that we should give him a pass, if you will, by his reference in the November 2014 letter? Well, it's our position, Your Honor, that the letter itself, it's giving the EEOC notice of it. And rightfully, you recognize that EEOC doesn't do anything for almost a year. He's saying the letter was a charge. That's what you're arguing. That is one of our arguments, Your Honor, yes. And the – but the issue with the retaliation, if you do not find that the letter is a charge, the issue with the retaliation in its relation to the ADA claim is that – but for the ADA claim, there wouldn't be retaliation. This is not an – That gets to a per se rule. That's what other circuits – but that's not our law. That's not our law. That gets you to a per se rule. Then you do get into an en banc issue. And I'm not arguing that it's a per se because it's retaliation. Where I'm going with this is that these facts are based upon – unlike waiters where you had a claim of retaliation that occurred beginning in 1978. The EEOC opened up a case in 1979 after a formal complaint, and then she eventually sues in the district court even though the EEOC had some remedies that it imposed. It never closed its case, and she files suit in the district court after 30 months passes. And then it's different people, different time. The case is held that the waiters is not out of line there. Now, in that case, the initial claim was retaliation. There was no retaliation at the time when the initial filing happened in Simcoe. Simcoe in 2013 was filing based upon the discrimination. Right, so the fact that it's years later that a retaliation claim is made and the fact that the termination is made actually a couple – I think if I got my facts right, it's a couple years later. And it's by different people in a different department. Doesn't that all go to the point that you're talking about two significantly different things, and you just can't sweep it all up together and say it was – you know, it's like the ragu sauce. It was all in there. It's in there. It wasn't in there, right? It wasn't in there, and that's the problem that is being alleged by U.S. Steel. How do you get past – if we're doing it on a case-by-case basis, as our case law tells us, and as the Morgan case seems to back up from the Supreme Court, How do you get from a disability discrimination charge to a timely and an appropriate retaliation charge based on that earlier ADA claim? Judge, there's a couple factors that come into effect here. One is the fact is, yes, he was terminated in 2014. There was also a termination, an interim termination in 2013. Now, in 2014, within 90 days of that, that's when he writes his letter to the EEOC. Part of and one of the factors on this issue is the EEOC's inaction at that point. Right, and that's a problem, but it's a problem for you, right? Not a problem for U.S. Steel. They sit on it and arguably shouldn't have sat on it, but they did. But this court previously, even in the – I believe it was in the Hicks case, recognized that a claimant should not be damaged by what the EEOC did fail to do. And in Hicks, he wanted to add a claim of sexual discrimination. He said, I thought it was amended. I tried to tell them. They didn't amend it. And this court remanded it. And for further proceedings to determine whether or not it would have been included. Now, that's a good point. A reasonable investigation at that point. But here, if we were to apply that, it would have to be whether a reasonable investigation under the disability discrimination claim would have revealed this. And it really wouldn't have. You really need to focus on the November letter, it seems to me, which wasn't raised in the district court, which is a big problem. But that's probably your strongest argument. With my argument at issue four of my brief, I cite to the various guidance that the EEOC follows in terms of its investigation. And that was a problem in Hicks when they said we don't have any evidence of what the EEOC would have done. Well, the EEOC guidance says it prioritizes retaliation. It will tell the respondent that it's possible that the claim will be broadened and or limited based upon our investigation. There's no dispute here that the investigation that came in response to the November 2014 letter did include allegations of retaliation because that's in the November 2014 letter. But if you didn't raise the November 2014 letter as being a charge to get within the 300 days in the district court, that's where I want you to go because that seems to be your biggest problem here to me. Yeah, speak to the forfeiture, please. Okay. On the issue with the scope of the investigation and where – if it would have come from the initial charge, in light of the fact – No, that's – stop. Wait. You're still not – the question that we're trying to get you to answer is why should we even listen to this argument? The district court – it was not made to the district court. We've got pretty clear law which says if you don't make an argument to the district court, you don't get to make it to us for the first time. It looks from my read of the record that this was not raised in the district court, and the argument is forfeited. What's your basis for saying, look, either it wasn't forfeited or you should ignore the forfeiture? Well, I was going to judge to the – if you're using the initial charge from 2013. No, no. Forget that. Focus on the November 2014 letter. When was it raised in the district court? If not, how do we address it? Can we address it? I think that you can address it because of the fact that – I think it's – I have it noted as on Appendix 6. The court comes out and says it doesn't constitute a charge. The court is making – Which court? The district court here? Yes, the district court here on Appendix page 6, in its opinion, comes out and says it is not – does not constitute a charge. It's making a legal conclusion that's subject to plenary review here. But it – that's sua sponte. You didn't raise it. We still have the issue that even if the district court gratuitously commented on something, just belt and suspenders, because if we were to – on appeal to think it merits our consideration, we'd know how the district court felt. But we still have the rule, as Judge Jordan said, that you don't raise something in district court. You forfeit it on appeal. How do you get past that? And I believe I cited in my brief the cases in Issue 1 with regard to these types of issues. If I may refer back briefly, the – Why don't you – bring it to our attention before you – everybody will have a chance to take a look at it because your time is going to expire on you. Okay. You said in page 6 of the appendix, there's a volume 1, volume 2, a supplemental appendix. Which appendix are you talking about? The appendix that's attached to the blue-covered brief that I have, Appendix 1. It's the opinion. It's the opinion, yeah, of the district court. Okay. At the bottom there, when she starts analyzing district court, Judge Conte starts analyzing equitable tolling, which I understand is the issue that's addressed by the EEOC in their briefing as well. Yeah, and the court is explicit in saying, and Simcoe does not contend otherwise. That's the language that's got us a little bit hung up. How is the district court to know whether it's in charge or not if you don't even bring up an argument? You don't – I mean, it was, in the district court's view, uncontested. How is that a finding that gets you past forfeiture? I have to admit that I did not bring it up in the district court. However, when the district court has based its decision on this premise. Well, it didn't base its decision on the 2014 letter. The district court's decision is not based upon whether or not the 2014 letter constitutes a charge for purposes of filing at the EEOC. If it did that, that forfeiture problem wouldn't be there. Correct. Okay, go ahead. Correct, Judge McKee. My point is that it went to the 2013 charge in questioning the scope of that investigation because, based upon the record, there is no appearance that this is a charge, even though it was part of the record. I know that Mr. Eggers has passed his seven minutes here. But if my colleagues will indulge me, you just used some important words that I would like to ask about real quickly. And that is the scope of the charge. You've taken the position that it's wrong, that the district court somehow was powerless to try to assess what the scope of the charge is. But how can it be that the scope of an investigation, I should say, is unreviewable when the test we've set up for exhaustion depends upon the scope of the investigation, right? I mean, the whole determination of whether or not something has been exhausted properly includes the question, well, is this something which would reasonably have come up in the scope of that investigation? So don't we have to be able to look at the scope of the investigation? Doesn't the district court have to be able to look at the scope of the investigation to make that exhaustion inquiry? So to – it does need to look at the scope of the investigation, but the issue that I had with it was that the precedent that we're using here does not provide for any sort of limitations on – there's a presumption of regularity in an investigation. And there are very little – True enough, but how does that answer the question? I mean, you took a position which is district court can't look at it. And then as a secondary position, you said even if you could properly look at it, this was within the scope, it was okay. I'm just asking on that first point, I don't see how that can be. I don't see how it can be the case that the court can't look at the scope. It's got to look at the scope. Otherwise, under the test we've set up for how you determine whether there's exhaustion, you couldn't apply the test, right? Well, I think it goes back to my – one of my initial points, Your Honor, which was the way this test was set up, it has been used as precedent to review what would have been done by the EEOC. And why the line of precedent that the court applied, which they said was objective, it was applied at every case where someone is bringing a claim that was not passed through the EEOC process. And here, just like there is the case of – I believe it's Mack Mining and the review of whether or not conciliation in that case was conducted, it notes that the judicial review of whether conciliation was conducted is very limited. And in my brief, I analogize to that and go back to that in reference to an investigation. For them to – or for a district court to say, well, it's too broad, which it did here because it said there's cases where we found it too limited. Right. There are cases where it's – so are you saying that that door only swings one way? There's power to look at the scope of the investigation and say too limited. EEOC, you were too limited. But it's never allowed to say, looking at the same investigation, it was too broad. Judges, as I understand the decisions with regard to the limitations, the court is, in those cases, looking at what the EEOC was required to do under statute or regulation, and they didn't do it. Right. And in this instance, they're saying, you didn't look at this, and you couldn't have looked at it because it wouldn't reasonably have come up. Right? Is it your position that a reasonable investigation flowing from the original failure to accommodate charge would have reasonably included and unearthed the later discharge and retaliation? Is that your position? Yes, it is because I think when the EEOC would have picked up the file and looked at it, they would have contacted Simcoe. Let's assume that he didn't even write the November 2014 letter and advise them that he's fired. They're going to call him up and ask him whether he's tried to rebid or whether he's still employed there, whether he's got another job, and they're going to find out he doesn't work there anymore. But that's assuming it's a reasonable investigation started after he files his disability complaint in December of 2013, and they're investigating that. Now, it's one thing if the same facts would reveal race as well as sex discrimination, but you're saying a reasonable investigation should have found out that he was discharged a year later? I'm saying when the EEOC would have responded to and investigated the charge that was pending, they would have looked at his employment status, and when they found out that he was no longer employed there, they would have asked the question why. He may have been employed. He may have been employed. Unless my dates are wrong, he filed the charge in May of 2013. He was fired December of 2013 the first time. The second time – no, the second time he was fired was December of 13 – no, the second time was August of 2014. The charge that he filed as of May 2013, he may not have been fired yet. Had they come in expeditiously, there would not have been a retaliation. And I have to agree with you, Judge McKee, and in fact, I note that in my brief where I said this is a unique circumstance where I – as a plaintiff's attorney, I let the EEOC continue on with this investigation. I didn't ask for a right to sue letter. I let them go on. There is no time limit for what they do and how they do it. And in doing that, more events occurred in 2014, specifically the termination that is the retaliation – the basis for the retaliation claim now. So is it your position that the EEOC can expand its authority effectively by sitting on cases? It can wait for other stuff to happen? And then we'll be asking Ms. Coleman the same question that inaction produces greater investigatory scope. We do nothing and then other stuff happens and we can say, well, things have changed. Now our investigation is wider and these other things will all relate back. Is that the legal position? No, that's not necessarily my position, particularly here when Simcoe, within 90 days of being terminated in 2014, he writes to the EEOC. He's saying, look, I believe this is a retaliation, but he gets no action. And they don't do anything with it. It's not a question of whether you did something wrong or didn't do something wrong. It's a question of whether the EEOC by inaction can claim that later occurring events, much later occurring events, are within the realm of the original charge. And it sounds like your argument is, yeah, that's right. And I'm assuming that's going to be the EEOC's position, and I'm curious to hear Ms. Coleman's defense of that position if it is their position. Just to follow up, Judge Jordan. I think it's subject to our Third Circuit law, which is, is it reasonably related to the scope of the charge or the investigation that follows? And it's going to be fact-specific, so I don't think that there can be a blanket rule like that. Well, then you do run into a weightless problem, it seems to me, because then you're establishing a per se rule. I'm relating it back. But why don't we – you saved time for rebuttal. I looked at page 6 of the opinion in the appendix that's part of your brief. I did not find the district court mentioning the November 2014 letter in that. So during your break, if you could just take some time and try to find out exactly where that is mentioned in the district court opinion. Judge McKee, just to be clear, it's page 5 of the opinion, but appendix page 6. Oh, page 5 of the opinion. Okay. Okay, great. Thank you. I'll take a look at it while Ms. Coleman's arguing then. I'll still be listening to you, Ms. Coleman. Okay, thank you. We'll get you back in rebuttal, Ms. Regers. Thank you. May it please the court, Gail Coleman for the EEOC. There are two critical points I'd like to make in response to the previous questioning. First is the suggestion that the EEOC just sat on the case essentially to allow more facts to develop and to bring in things that would not have been within the scope of the original investigation. In fact, the EEOC receives thousands and thousands and thousands of charges every year. We're legally obligated to investigate all of them. Let me ask you a question. You're urging that the November 2014 letter should be deemed to be a charge. Correct. Does that run afoul of Morgan, run afoul of the very statutory requirements for what charges are to contain and what they're supposed to be? I mean, this is a statement at the bottom of a multi-page letter. And U.S. Steel was never put on notice of this until an amended charge was filed in 2016. Isn't this a very slippery slope as to what constitutes a charge? Respectfully, no. In Holowecki, the Supreme Court said that what constitutes a charge must be interpreted really very liberally, especially because so many charges are initiated by pro se individuals. All that a charge has to do under Holowecki is satisfy the requirements that it be in writing, but it has to request the EEOC to act. And that request can be implicit. Here, it's not just a sentence at the bottom of a very long letter. Actually, there were five different references to this throughout the letter. And in each reference, Mr. Simcoe said, I was fired, I believe it because it was retaliation for having filed a charge. He sent this to the EEOC. And in that letter, he specifically said, I believe that anybody who looks at this will see it was retaliation. Then the EEOC should have helped him file a charge, correct? That is exactly right, Your Honor. But that didn't happen. That's right. By virtue of the EEOC's failure, automatically his letter becomes a charge? That doesn't seem right. No. Because of the EEOC's, well, essentially, yes. Because of the EEOC's failure, there should be some kind of equitable tolling that would then allow his... Apples and oranges. You're getting to equitable tolling. I thought your position was, and Mr. Edgar's position was, that the November 2014 letter, especially when we review it liberally, as we must, because they're pro se, contains all of the statutory requirements for a charge if we then assume that subsequently, when he verified that letter, it then satisfied the verification requirement. There's another question then as to whether or not the letter became a charge when it was written in November of 2014 or upon it being verified. But by that, I guess the investigation had taken place. And you can look back at the disjunctive language that talks about a charge or investigation and rely upon the second part of that. But don't get into equitable tolling yet because I still want to hear your response to Judge Rendell about the legal, the statutory prerequisites for a charge and why the November 2014 letter satisfies them. Forgetting for a second the fact that it may have been forfeited. Well, because of Holowecki and Edelman. Holowecki, it can be a very informal thing that constitutes a charge as long as the EEOC would reasonably construe it as a request to help. Okay, it was a request. They should review, construe it as a request. But it's not verified, so it's not a charge. It was verified from a request. You say it's a request, which it seems to be. But how does it get converted into a charge as such, a statutory charge? Because under Edelman, verification only needs to happen before the employer is asked to respond. And then that verification relates back to the original date. So now that brings you to the... I'm sorry. The employer has no opportunity at that point to look at the facts, and it's all stale by the time the 2016 amendment occurs. Well, in fact, in this case, first of all, the employer was put on notice before the 2016 amendment. In November of 2015, the EEOC told the defendant there would be a new retaliation claim coming, and they were aware. The EEOC in this case, actually, because there was an actual and not a hypothetical investigation, actually every single purpose of the charge filing requirement was satisfied. Well, that gets to the point that I was asking about earlier, and you were taking, it seemed, a little umbrage. This is not an attack on the EEOC's good faith or anything like that. It's just a strict legal question, Ms. Coleman. How is it that EEOC inaction can produce a wider scope of investigation? That's what it comes down to, right? Because if EEOC had acted timely, it would have been acting strictly on a disability discrimination charge, and there would not have been any retaliation charge to deal with because he wasn't fired until a couple years later, right? Well, respectfully, in terms of the EEOC acting timely, we don't have a time limitation for how long our investigations are supposed to take. Okay, well then that answers my question. The EEOC's legal position is we can just wait 10 years, and if stuff happens, it happens, and it all goes back. Because there's no time limit on us. No, I think at some point, probably, the employer could fairly raise Latch's argument. That's not what happened here. Latch's is the only limitation. As long as you do nothing and events continue to accrue, it all goes back to the beginning. That's the EEOC's view. I wouldn't say that we did nothing. There was an investigation that was taking a long time. And I will say that the EEOC routinely and always asks about retaliation for the filing of a charge. That is critically important to our ability to enforce the statute. And there was no retaliation for at least two years, right? Well, no, actually, the termination was 15 months after the EEOC charge was filed. So two years is an extreme, you know, that's a stretch, factually. Waiters is the only precedent from this court in which there was an actual investigation as opposed to a hypothetical investigation. It is true that in all of the cases, the court has talked about the scope of the reasonable investigation language, but has only applied that in cases when it's talking about a hypothetical investigation that did not reach the particular issue. And so the question was, was the investigation too narrow? This court has never asked whether an investigation is too broad. Have we ever asked the question, I mean, is it not implicit in the questions we've asked before? Not even implicit, explicit, whether this is something related, whether it would naturally have come up. And the answer is, I guess, in this instance, your answer is, well, not only naturally would come up, it did come up. That's your point. It came up, and it came up, and we're allowed to look at it because we're not under any time constraints. If I understood that correctly. Well, it came, not only did it come up, but the employer was able to respond on the merits, and we invited conciliation. So literally every single purpose of the charge filing requirement was satisfied here, unlike when we talk about a hypothetical investigation. Let me ask you about equitable tolling. How can you make the equitable tolling argument when Mr. Simcoe hasn't? Well, I think that although this court rarely uses it, it does have discretion to consider an argument raised by an amicus. We have not briefed whether that is what you should do. We're offering you this argument because we think it's compelling. And because, you know, we are here as the EEOC saying we made a mistake. We should have helped him convert this into a charge. That is our job. He was pro se when he filed his first charge. Certainly we helped him do it. He certainly had every reason to believe if there was more he needed to do, we would help him again. He sent us that letter in a timely way. We dropped the ball. How do we deal with the waiver issue on the November 24, 2014? Your strongest argument seems to me to give on all these other problems is to look at the 2014 letter. What you just said about the verification relating back is very, very helpful. But help me understand your argument. And I know it's Mr. Eggers' argument. How do we get past his failure to raise that in front of the district court? Again, that is something we haven't briefed. So I suppose I would have to defer to Mr. Eggers. I would just say that in my understanding of forfeiture, if a party does not raise a claim to the district court, and the district court then ignores it on appeal of the court, the party who had not raised it can't then revive it. But once the court actually makes a ruling on something, that should be open to challenge on appeal. Well, it wasn't really a ruling, though. It was a kind of a belt and suspenders, as Judge Mendoza said. Well, it's not a charge, and the party doesn't argue with that anyway. But it was two parts. Part of it really was, it's not a charge. And as a legal matter, I'm not going to argue with that. And technically, since it was unverified at that point, maybe it wasn't a charge? Well, it became a charge once it was verified. I know you understand the verification reaches back, but the court didn't have any of that argument in front of it. I mean, the purpose of the forfeiture rule is so that district courts don't get sandbagged, so that you don't look at something and say, well, it doesn't look like this to me, and nobody's arguing to me that it is. And then the other side doesn't get to come in, do they, and say, well, you said something about it, so it's wide open now, even though nobody argued the merits to you. I certainly understand your concern. And as I said, the EEOC did not weigh in on that issue. We're just here really as an amicus to present how we think the law should be analyzed. And obviously, which arguments you take off, that's not up to us. Now, our law in our circuit is different from many of the other circuits. I assume you would like this to go in bank, so we conform our law to the other circuits. We vigorously urge you to go on bank. In the EEOC's view, every single allegation of retaliation for the filing of a charge is reasonably related to that charge. What's your view on Morgan? Doesn't Morgan actually back up the Third Circuit's view? I mean, it persuaded the Tenth Circuit and the Eighth Circuit that they were wrong and should walk away from a per se rule. Why should we walk away from the case-by-case rule that those other circuits thought was the more correct one after Morgan? Well, I'm glad you asked about Morgan. In our view, those courts misread it. Morgan is about not allowing a party to revive a stale claim. It's about a statute of limitations. Morgan addresses conduct that occurred prior to the filing of an initial charge, conduct that the charging party could have and should have raised at that time, but didn't. And so, to allow the party to raise that prior conduct later is an end run around a statute of limitations. That is different from what we're talking about here, which is post-charge conduct that is occurring during the course of an EEOC investigation. We can look at it. They can contact the EEOC investigator. There's no end run around anything. It's all part of what we're – we have the ability to look at it already. So, Morgan really is very different. And the Tenth and the Eighth misread it, got it wrong. That's our position, yes. Okay. If there are no further questions, I see my time is up. Okay. Thank you. Thank you. Mr. Torbek. Thank you, Your Honor. Good afternoon. May it please the court, my name is Rod Torbek. I represent the United States Steel Corporation. And we're asking this court on review to affirm the decision that Judge Conte made to dismiss Mr. Simcoe's case. Mr. Simcoe brought a retaliation claim. He brought it in an untimely manner, well beyond the statute of limitations filing period. And he is unable to bring a viable claim outside of the 300 days to – Why shouldn't we, given all that happened in response to that February letter, given the equities here in the EEOC, actually kind of throwing itself on the grenade, and I commend counsel for accepting the responsibility for its dereliction. And I understand the EEOC, you've got to be incredibly overworked. I can only begin to imagine how many cases the agency has to deal with. So, I'm not necessarily faulting the agency for the lapse of time here, but the lapse of time happened. Why shouldn't we look at the November 2014 letter? If you read it, it's got retaliation in there. The verification relates back. It gave rise to an investigation. And our cases say that a charge or investigation, the investigation happened. They tried conciliation. That didn't work out so well. So, why shouldn't the November 2014 letter constitute a charge? I'll address the letter here in a moment, Your Honor, but I do want to touch upon the points that I think this court was already stating, which is this was not an issue that was presented to Judge Condon. And we had plenty of time to address this issue. In fact, I pointed this out in my reply to the plaintiff's opposition to the motion to dismiss when they submitted that letter, that they are not arguing that this is a charge. And not only – You submitted that to the district court. I put that in my reply brief to – The motion to dismiss. To the motion to dismiss. Okay. So, you're the one that put it in front of the district court. Pardon me? You're the one who put it in front of the district court and got the district court to say something about it, Mr. Thorpe. How are you in a position to argue for forfeiture then? Well, because at the following hearing, the court recognized the plaintiff was only making a tolling argument. Okay. And the court asked Mr. Ager specifically. She made a comment. I think we get – this brings us to the equitably tolling issue. This is on appendix page 133. Which appendix? The fact of the handwritten letter. Which appendix, counsel? This is the supplemental – volume 2 of 2. It's beginning on lines 8 through 15, I believe. Okay. The court's statement was – but I think we get – this brings us to the equitable tolling issue. What was the effect of the handwritten letter in terms of equitable tolling? And then she asked the question. I think – or makes a statement. I think all of us can agree the charge with respect to retaliation wasn't filed until January of 2016. And Mr. Ager said correct. And that was – that framed the case right there. Not to mention the briefs that the plaintiff filed. The forfeiture has been argued at length, and we understand the point. Now, can you address the merits? Assume that we got past forfeiture. For some reason we thought, you know, the district court looked at it and spoke to it in its opinion. We could address it. Assume that for the sake of discussion. Why isn't the November 14th letter a charge? It says straight up anyone who has familiarized themselves with the details of the case will clearly see it as retaliation for filing charges with the EEOC. It's a statement of retaliation. And that's later verified. And as the EEOC's attorney has pointed out, under Supreme Court case law, that verification is nunk-pro-tunk. So why isn't it a charge? Only – verification is – relates back only if that November letter is deemed a charge. And I submit to the court that it cannot be viewed and recognized as a charge because – Right. That's what you're being asked. Why not? Right. Because a variety of reasons. One is there are several leaps that are being made here by plaintiffs and the EEOC to assume that this letter was written as a request from Mr. Simcoe to the EEOC for a request for help. There's no address on the letter to the EEOC. There's no date on it. Well, it went to the EEOC. I mean, in fact, we're not debating that, right? It went to the EEOC. They got the letter. I don't know how it was addressed. I'm not debating that. I'm not debating that. And the EEOC receives – they receive a lot of correspondence. I think this level of correspondence would eliminate the formalities that go around a charge. Well, the formalities have been satisfied. We know the statutory formalities. The only one possibly that – especially when we interpret this liberally as we have to, the only one which might prevent this from becoming a charge is the verification. We've already addressed that. The verification does not prevent it. Unless I'm mistaken, the regulations say specifically, quote, a charge is sufficient when the commission receives from the person making the charge a written statement sufficiently precise to identify the parties and describe generally the action or practices complained of. The statement, which I just quoted to you a moment ago, well, I mean, why doesn't it satisfy every one of those things? Well, the statute itself requires that the charge be verified. As of when? Well, according to the court settlement, as long as it's verified before the respondent is called upon to answer the charge. And we have that. When did you get – when did you get notice of the charge? Well, it's unclear, Your Honor. I think the firm date is when in – after the charge was signed on January 21st, 2016. There is an earlier letter in the appendix that indicates that the EEOC spoke with a labor relator from U.S. Steel on December 18th, 2015 and makes a note that the charge will later be amended to bring up retaliation. But it's unclear from that EEOC note to the file whether they made U.S. Steel aware of that. And Mr. Eggers says he's acknowledged that. In any event, you didn't receive notice – if this was a charge, if this had been a charge, you would have received notice of it, would you not? The letter itself? Yes. Yeah, the letter itself. Well, we should have been – we should have been notified of it under the statute within 10 days. Well, that's why I'm curious that you didn't right up front say that that's a reason why it wouldn't be a charge because notice to you is something that would be important, correct? Well, absolutely it's correct. We were not notified until well after the discharge that he was asserting some kind of retaliation. Well, moving into 28J letter 2 as to the date, and I guess it may be in the EEOC records as well as Mr. Eggers' records, the date that that notification was given notification in the form of the investigation. You see, my understanding was that that was within 300 days of the November 2014 letter, which gets back to whether or not we can look at that 2014 letter as the charge. I think she said summer. No, I believe it was near 500 days, Your Honor. The investigation started 500 days from the November 2014 letter? I thought it was 500 days from the discharge. From the discharge. Okay. No, if you're starting the clock from the date of the November 14 letter, then it's still beyond 300 days for U.S. still to receive notice of that letter. And the statute requires a 10-day notice. From the EEOC or from the complainant? From the EEOC. Okay. Ricky, go ahead. I interrupted you. Okay. All right. Well, you know, I think, again, the statute's real clear as to what's required here, that a charge must be filed in Pennsylvania as a deferral state within 300 days of the unlawful practice. And that's expressed clearly in the statute as noted by the Supreme Court in the Morgan case. That, because of the fact, in this case, when the charge itself here, first alleging retaliation, was raised at least 520-some days after the discharge, is well beyond the statute of limitations. Well, yeah, not if the November 14 letter is a charge, right? You've got to lean on the forfeiture there, because if that November 14 letter constitutes a charge, as accepted as such, your argument goes away, doesn't it? If it's accepted as such, right? If you put aside the waiver, but I'm not conceding that that is a charge. I'm not suggesting you are. I'm just making clear on the record that your argument depends upon that November 14 charge, quote, letter, not being a charge, right? Right. The EEOC didn't treat it as a charge. We were not served within 10 days. Mr. Eggers, in the course of the proceeding, acknowledged that that was not a charge. And I just don't think it meets the statutory or the regulatory requirements for a charge. It wasn't served. It wasn't verified. We've heard that pretty well. It wasn't served within 10 days, but it was verified. It wasn't served within 10 days, correct. If it's just a compilation of papers that's not addressed to the EEOC, doesn't ask them to pursue any kind of action against U.S. Steel or take any steps to pursue an action. It's just a jumble of paper, a hodgepodge of papers. When you say jumble hodgepodge, it's a pretty clear allegation that he was fired because he was not able to hear well enough the job he was trying to get and that they retaliated against him after he filed the charge. You can call that a mumbo jumbo if you want, but especially for a layperson, it is a pretty clear exposition of what his complaint is against the USCC. I acknowledge that language is in there, but I think what's missing here, and EEOC and plaintiff's counsel are taking the leaps here, is that that was a direction to the EEOC to look into my allegation. Well, not just, look, not just, you can absolutely fairly read when he says anybody looking at this would see it's retaliation as a statement that it's not just, it's no longer in his mind just about disability, it's about retaliation. But leave that aside for a second. Assume that we thought, well, we can't look at the November 14 letter. Speak to the argument that this is all still part of the original, there doesn't have to be exhausted because it's well established that when a new allegation falls within the scope of a prior EEOC complaint or investigation that arose out of it, it's okay. That's the position that the plaintiff has taken, that's the position that EEOC has taken in its amicus brief. Why are they wrong? Why are they wrong? Well, I think they're asking, they're asking this court to adopt that per se standard. And the statute prohibits that view, that argument. Because the statute is real clear that a charge must be filed within 300 days of a discreet act. And it notes that this charge is a discreet act. And that's what Morgan made clear as well. Assume it's not a per se. Their argument may be not that it's per se, but that it's within the scope of this investigation. Go ahead, use your case. Knock yourself out, Third Circuit. Use your case-by-case analysis if you want. In this case, this retaliation claim came up in the course of this investigation, and you should pay attention to it and not require an exhaustion here because it's okay. What's wrong with that? What's wrong with that? That violates the statute, the limitations period in the statute. It goes against Morgan. And it doesn't relate back, nor does it relate back to that original charge. As I think Judge Rendell noted, the original charge dealt with disability discrimination from events in a different department that occurred in 2012 with different managers. And then this retaliation claim discusses events that occurred in the blast furnace area in a different position, different department, different managers, nearly two years later in the course of time from the events that were within that original charge of discrimination. It has to do with that original charge of discrimination that the investigation should focus. If you're going to make a determination. The test is not whether it ultimately came to light, but whether it was fairly within the scope of the original charge or fairly within the scope of the investigation that would have arisen there from. And your argument is that it wouldn't be fairly within the scope. That's correct. That was the argument that I made to Judge Ponte and she agreed. Judge Rendell, you got cut off a couple times. Once by me, once by our colleague. Was that the question you wanted to ask? I want to make sure you get the question out. I want to make sure you got your question out because I cut you off one time, I think. Ken cut you off one time. I think I cut you guys off too. No worries. I'm good. Okay. Okay. Nothing else. Okay, we'll take the matter. I asked for the court again to affirm the judge decision. Thank you. And I was about ready to take an advisement. Mr. Eggers reserves some time for rebuttal. I think you're still on mute. Okay. Thank you, Your Honor. I just wanted to cover a couple points brought up by the ESC as well as us steel. I'll refer the court to the Hicks opinion as it relates to the argument that there's this delay that created a problem here where 500 days passes, and this should not be able to proceed because of that. In Hicks, this court recognized that a civil suit will lie even when the EEOC has failed to give the defendant notice of a charge or has even failed to attempt to reconcile the parties. Simcoe did what best he could. As a layperson, pro se, I didn't represent him until after the EEOC contacted him and said we need some information. I'll refer your honors to the appendix to as it relates to that. There is an appendix to pages 83 and 84 and 85. There are some notes from the investigator dated November 23rd, 2015, noting his call to U.S. Steel, telling them that they wanted to know whether Mr. Simcoe was still working there, and they noted that Mr. Simcoe was discharged effective October 25th, 2014. Then he wrote a letter the investigator does to Mr. Simcoe saying I can't reach you by phone, but I have some questions. I'm the latest investigator on your case. I have some questions I need you to respond to. At that point, things finally started to heat up, and the EEOC reached out to us. We sat down for a telephone interview, and eventually the charge was signed on the 21st of January of 2016. It was received by the EEOC the following day on January 22nd. And to go to, I believe it was Judge McKee's point, when did they receive it? On appendix 2, page 95, there is the EEOC form 131, which indicates it's being transmitted to Teagan Groves at Labor Relations at U.S. Steel. And it asks to provide a statement in response for their position by February 12th. So that appears to be where they're sending the verified charge under the form that was eventually filled out to U.S. Steel. As it relates to the Morgan case, I would echo the points of the EEOC that Morgan is inapplicable, and to the extent that the Tenth and the Eighth Circuits have agreed that it applies in an instance like this. Let me just – I know we're running out of time here, but Morgan specifically says every one of these acts that you complain of, at least in the Title VII realm, right, so it's not directly on point, but it's pretty analogous, constitutes an independent act, and the clock starts again. Now, you can characterize that, as Ms. Coleman has, as just simply a statement about the statute of limitations, but why isn't it also a statement about you should look at these things individually and not as just it's all in there together, but these are individual acts to be paid attention to individually? Well, I think you have to take Morgan from its facts that it was looking back on an issue of a continuing violation argument. It was trying to stretch back into the past before any investigation occurred, before any charge was even filed, to try to bring acts that were outside the 300-day limit or the 180-day limit within the statute. That's the case, and if the court were to adopt Morgan, I don't think that our current precedent that we're dealing with here would survive Morgan if that was the case. Well, did the court specifically in Morgan cited retaliatory employment actions as one of the things that is to be viewed at discreetly and not part of some earlier thing? Didn't it? I believe you're correct, Your Honor. But at the same time, our precedent is saying look at what the scope of the charge is in the investigation, and the purpose of the EEOC's process is to allow someone like Simcoe, who is at this time unrepresented, to present his problem to the EEOC, enlist their help, and have them look at this. If he is unaware about the fact that there's a law that prohibits retaliation or what retaliation even looks like or that it even occurred to him, then he would be completely kept from making that claim. But if the EEOC finds it in an investigation, it should be allowed to be pursued. But in this case, Simcoe did recognize it as retaliation. He alerted them, and he waited for a response, and he waited for action, and he thought this case is open. I should give them an update, and they should look into it. Is the disability discrimination case still open at that time? Excuse me, Judge Rendell. I didn't hear the first part. The disability discrimination case was still open in November of 2014? Yes. And is it still pending now, awaiting this determination? No. What had happened was the charge in May of 2013 was amended by the EEOC, by the charge that was refiled in January of 2016 that I just mentioned a few moments ago. It's an amended charge kept under the same number, and they issued a reasonable cause finding, the EEOC did, saying that there is retaliation here, but we did not find any reasonable cause for the other claim. Based upon that, they attempted conciliation. It did not occur. Thank you. That's all I know. If there's any other questions, I'd be happy to answer them. Anything else? Nothing further. Okay. Thank you. Thank you very much. Now, again, I want to commend Ms. Coleman. I'm not sure if it was your decision. It probably isn't. The bureaucracy's worked, but I found the EEOC's candor here very commendable. It doesn't mean anything about the merits, obviously, but you obviously, not you popped the ball, but your agency did. And to come in and admit that, I wish we had more agencies and more attorneys who are willing to concede things that need to be conceded. It would make life a lot easier and a lot more just in a whole lot of cases. Thank you very much, everybody, and we'll take that under advisement.